PEOPLE v THOMAS BERRY (ON REMAND)

Docket No. 139800. Submitted October 21, 1992, at Detroit. Decided February 1, 1993, at 9:20 A.M. Leave to appeal sought.

Thomas Berry, Jr., was convicted in 1964 in the Detroit Recorder's Court, Dennis J. O'Keefe, J., of first-degree murder after he pleaded guilty of open murder and the court determined, following a hearing conducted pursuant to MCL 750.318; MSA 28.550, that the murder had been premeditated. In 1989, the defendant sought leave to file a delayed motion for a new trial, claiming that he never personally pleaded guilty or acknowledged his attorney's assertion of a guilty plea and that the court failed to question him regarding the truthfulness and voluntariness of the plea. The court, Warfield Moore, J., denied leave. The Court of Appeals denied the defendant leave to appeal. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 437 Mich 973 (1991).

On remand, the Court of Appeals held:

1. The defendant indicated his assent to a guilty plea when his attorney requested a hearing to determine the degree of the murder, when he answered the trial court's questions regarding his waiver of a jury trial, and when he acknowledged at the degree hearing that he was pleading guilty of murder and that the trial court would determine its degree.

2. The trial court's failure to ask the defendant whether he was freely, understandingly, and voluntarily pleading guilty, as was required generally in guilty plea cases pursuant to GCR 1963, 785.3(2), does not require reversal of his conviction. The purpose of the requirement that a defendant be directly questioned about a guilty plea was to establish the crime and the defendant's participation in the crime to safeguard against involuntary or induced false pleas of guilty and against subsequent false claims of innocence. In this case, sworn testimony at the degree hearing established the defendant's crime. The trial court made a reasonable inquiry with regard to whether

the defendant's guilty plea had been freely, understandingly, and voluntarily made.

3. Sufficient evidence of premeditation was presented at the degree hearing to support the conviction of first-degree murder.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz*), for the defendant.

ON REMAND

Before: REILLY, P.J., and MICHAEL J. KELLY and CAVANAGH, JJ.

REILLY, P.J. On remand by the Supreme Court for consideration of his appeal as on leave granted, 437 Mich 973 (1991), defendant, Thomas Berry, Jr., argues that his conviction should be reversed because (1) he never personally pleaded guilty of open murder or acknowledged defense counsel's assertion of the plea and (2) the trial court did not personally question him regarding the truthfulness and voluntariness of the plea.

Contrary to defendant's first assertion, we conclude that he did assent to his counsel's assertion of a guilty plea to the charge of open murder and a request that the trial court conduct a hearing pursuant to MCL 750.318; MSA 28.550 to determine the degree of the murder. Defendant was present in the courtroom and answered the court's questions regarding his waiver of a jury trial. Furthermore, during the degree hearing defendant

acknowledged, upon questioning by his attorney, that he was pleading guilty of murder and that he was aware that the trial court would determine the degree of murder.

With regard to defendant's second assertion, we disagree that reversal is required because the trial court failed to personally question defendant to ascertain whether the plea was understandingly and voluntarily made.

At the time of defendant's plea in 1964, guidelines for the acceptance of guilty pleas were provided by statute and court rule. MCL 768.35; MSA 28.1058 provided (and continues to provide):

> Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed.

The court rule, GCR 1963, 785.3(2), provided:

> If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress,

and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted.

The provision of the court rule that stated that "the court shall examine the accused . . . and shall ascertain that the plea was . . . understandingly . . . made" required that the court conduct an examination in order to determine that what the defendant actually did was a crime. *People v Taylor,* 387 Mich 209, 224; 195 NW2d 856 (1972). In *People v Barrows,* 358 Mich 267, 272; 99 NW2d 347 (1959), the Michigan Supreme Court, in reference to Court Rule No 35A (1945), the predecessor of GCR 1963, 785.3, held the following:

> The direct questioning of a defendant by the trial judge on a plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty. This is a precaution against involuntary or induced false pleas of guilty, and against subsequent false claims of innocence.

In this case, the trial court did not establish by direct questioning of defendant "the crime and the participation therein of the person pleading guilty" as required by *Barrows.* However, this does not require reversal. The open murder procedure used in this case, pursuant to MCL 750.318; MSA 28.550, involved a plea, a testimonial hearing, and fact finding by the trial court. Accordingly, the analysis of a plea made pursuant to this procedure is different from the normal summary plea proceeding. See *Berry v Mintzes,* 529 F Supp 1067, 1078, n 18 (ED Mich, 1981). The limitation imposed by *Barrows* is directed to the typical situation where a plea is offered at a summary hearing and is designed to prevent reliance on evidence

that the court does not have before it when it decides whether to accept the plea. *People v Armstrong,* 390 Mich 693, 699; 213 NW2d 190 (1973).

In this case, the trial court heard sworn testimony regarding the crime and defendant's participation in the crime and was therefore in a position to reasonably ascertain the truth of the plea. *Barrows, supra* at 272. The use of sworn testimony presented at an evidentiary hearing to determine degree is an acceptable alternative to the direct questioning of defendant by the court with respect to the understanding nature of the plea in a summary plea proceeding. Therefore, we hold that defendant is not entitled to a new trial. See *Armstrong, supra.*

In *People v Jackson,* 30 Mich App 173; 186 NW2d 40 (1971), a panel of this Court reversed the defendants' convictions because the questioning of the defendants regarding the understanding and voluntary nature of their pleas was done not by the trial court, but by defense counsel. The Court, relying on *Barrows, supra,* found that the examination should have been conducted by the trial judge to insure that the plea was not involuntary or false. *Jackson, supra* at 175.

We conclude that *Jackson,* which involved a summary plea proceeding, does not require reversal in this case. The trial court, after being informed by defense counsel of defendant's wish to plead guilty of open murder and request for a degree hearing, informed defendant of the charge against him. The trial court questioned defendant regarding his waiver of a jury trial and then asked him, "Has anybody made you any promise of favor or reward for your plea at this time?" Defendant answered in the negative. Moreover, during the degree hearing, defendant, in his responses to questions asked by defense counsel, stated that the

plea was made with his knowledge and consent. We conclude that the trial court made a reasonable effort, according to the standard of the day, to determine whether defendant's plea was voluntarily made.

The Court in *Jackson* stated that the rationale underlying GCR 1963, 785.3 was the prevention of involuntary or false pleas. Two federal courts have considered defendant's habeas corpus petitions and, although the issue whether the trial court complied with the court rule was not addressed, the courts did conclude that defendant's guilty plea was voluntary under the federal constitutional standards applicable at the time of his plea. *Berry v Mintzes,* 529 F Supp 1067, 1076-1079 (ED Mich, 1981); *Berry v Mintzes,* 726 F2d 1142, 1150 (CA 6, 1984), cert den sub nom *Berry v Foltz,* 467 US 1245 (1984). Thus, there has already been a determination that defendant's due process rights have not been violated.

Lastly, we find, contrary to defendant's assertion on appeal, that there was sufficient evidence of premeditation and deliberation presented at the degree hearing to support the trial court's finding that defendant committed first-degree murder. Premeditation may be inferred from, among other things, the defendant's actions before and after the crime and the circumstances of the killing itself, including the type of weapon used and the location of the wounds inflicted. *People v Coddington,* 188 Mich App 584, 600; 470 NW2d 478 (1991). See also *People v Case,* 7 Mich App 217, 227; 151 NW2d 375 (1967).

The evidence presented at the degree hearing established that defendant purchased a knife just before the robbery and murder. His codefendant testified that defendant asked him how far he

would be willing to go with respect to the commission of the robbery. During the course of the robbery, defendant held the knife to the victim's neck and the codefendant testified that he saw a trickle of blood on the side of the victim's neck. The victim died of a stab wound to the neck. Although defendant testified that the victim was accidently stabbed when he lunged at defendant, his codefendant testified that it did not appear that defendant was defending himself when the victim was stabbed. While the codefendant's statement at the hearing contradicted his earlier statement that he did not see the actual stabbing, the credibility of the witness was for the trial court to decide.

Viewing the evidence in the light most favorable to the prosecution, we conclude from the circumstances surrounding the killing, the weapon used, the type of wound inflicted, and defendant's own statement, that a rationale trier of fact could have found that the element of premeditation was established beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985), citing *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), cert den 449 US 885 (1980), and *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979).[1]

Affirmed.

---

[1] See also *Berry, supra,* 529 F Supp 1076, n 14, and 726 F2d 1148, n 4, where the federal district court and the Sixth Circuit Court of Appeals noted, in dicta, that the trial court's finding of premeditation was based upon sufficient evidence under the standard described in *Jackson, supra.*